1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ESTHER DIAZ ARGUETA,

                Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

             Defendant.
_____/

Case No.  1:15-cv-01110-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.      INTRODUCTION

On July 19, 2015, Plaintiff Esther Diaz Argueta ("Plaintiff") filed a complaint under 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI).  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.      BACKGROUND

Plaintiff was born on August 26, 1957, and is currently 58 years old.  (Administrative

_____

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7, 8.)

Record ("AR") 98.)  She is from El Salvador, has a sixth-grade education, and speaks only Spanish.  (AR 55.)  On September 30, 2011, Plaintiff filed a claim for DIB and SSI payments, alleging she became disabled on May 22, 2010, due to injuries to her right knee, right shoulder, right foot, and lower back.  (AR 38, 42, 98, 109.)  From 2001 to May 22, 2010, Plaintiff was sorter for a produce company.  (AR 310.)

## A.     Relevant Medical Evidence[2]

In February 2010, while working as an orange sorter, Plaintiff slipped from a stool and caught herself on a conveyor belt, injuring her right shoulder, right knee, low back, and neck. (AR 408, 389.)  Plaintiff thereafter had physical therapy throughout 2010 to relieve pain.  (AR 386, 392-93, 396, 398, 521, 403, 408.)  She underwent MRIs of her cervical spine (neck) and lumbar spine (low back) in June and July 2010, respectively, revealing posterior disc bulges with no evidence of stenosis or narrowing in the cervical spine (AR 438), and mild to moderate narrowing in the lumbar spine.  (AR 435.)

Plaintiff had an agreed medical evaluation for her worker's compensation claim in January 2011 with Jaime Contreras, M.D.  Plaintiff told Dr. Contreras that after her injury in February 2010, she had modified work that involved lifting only up to 10 pounds and standing and walking only four hours per day.  (AR 408-09).  She was laid off from her modified work on May 22, 2010.  (AR 408.)  Dr. Contreras found no tenderness in Plaintiff's cervical roots, but tenderness in the interspinous ligaments and transverse processes, decreased range of motion with pain, and normal sensation and reflexes in the arms.  (AR 410.)  Plaintiff also had decreased range of motion in her low back with pain and tenderness, but had normal sensation and reflexes in her legs, and normal muscle strength, indicating no atrophy.  (AR 411.)  Dr. Contreras observed that Plaintiff had pain on motion of her right shoulder and a "positive" impingement sign, but found no palpable bone deformities, no soft tissue masses, no articular effusion and no evidence of ligament instability.  (AR 411.)  He further found tenderness in Plaintiff's right knee, with pain on motion and crepitation of the patellofemoral joint.  (AR 412.)  Dr. Contreras

---

[2] As Plaintiff's assertion of error is limited to the ALJ's consideration of her alleged pain symptoms, only evidence relevant to these arguments is set forth below.

diagnosed Plaintiff with "multi level intervertebral cervical disc syndrome," "multi level intervertebral lumbar disc syndrome with mild right sciatic radiculopathy," "supraspinatus infraspinatus tendinopathy, bicipital tendinitis, impingement syndrome" in her right shoulder, "oblique radial tear of the posterior horn and mid portion of the medial meniscus" in her right knee, and a right ankle sprain.  (AR 416.)  Dr. Contreras recommended that Plaintiff have physical therapy and over-the-counter medication for her pain.  (AR 416.).  He found no indications for surgery to Plaintiff's neck, lower back, right shoulder, or right ankle, but he did recommend that Plaintiff receive arthroscopic surgery of her right knee.  (AR 416.)  Dr. Contreras opined that Plaintiff should avoid heavy lifting, repetitive bending, prolonged sitting, working above the shoulder with her right arm, and prolonged standing and walking.  (AR 418.)

Plaintiff began treatment with The Spine and Orthopedic Center in March 2011.  (AR 608.)  She had reduced range of motion and tenderness, but had normal motor strength, intact sensation, symmetrical reflexes, and negative straight-leg raising tests.  (AR 609).  The treating physician opined that Plaintiff should perform a "sitting job only, no lifting."  (AR 610.) Plaintiff continued with treatment throughout 2011, reporting improvement from medication and acupuncture.  (AR 555, 566, 570, 574-75.)  Plaintiff said that she could sit, stand, or walk for between 15 and 30 minutes at a time.  (AR 613-26.)

On October 17, 2011, Plaintiff had surgery on her right knee.  (AR 664-65.)  She thereafter had physical therapy, which she reported was "very beneficial."  (AR 853.) By December 2011, Plaintiff was able to sit and walk for one hour each, and stand for 15 minutes at a time. (AR 879.)  In January 2012, Plaintiff said she could sit for only 30 minutes at a time, and stand and walk for 20 minutes each.  (AR 877.)  Plaintiff's chiropractor said that her knee improved only marginally from surgery; the chiropractor believed this was because she waited too long for surgery.  (AR 742-43.)

On January 16, 2012, State agency physician N. Shibuya, M.D., reviewed Plaintiff's records for her disability claim.  Dr. Shibuya opined that Plaintiff could stand and walk about six hours each per day, sit for about six hours per day, lift and carry up to 20 pounds occasionally and 10 pounds frequently; and could occasionally balance, stoop, kneel, crouch, crawl, and climb

ramps and stairs, but could never climb ropes, ladders, or scaffolds.  (AR 103-04.)  Dr. Shibuya

concluded also that Plaintiff had limitations in overhead reaching, and should avoid concentrated

exposure to hazards such as unprotected heights, inclined planes, and uneven terrain because of

her pain.  (AR 104-05.)

Plaintiff continued to report pain, and continued with physical therapy, acupuncture, and

home exercise.  (AR 841-42.)  She told her chiropractor that she did not believe that she was

"being addressed appropriately for her medical conditions" through the worker's compensation

system.  (AR 738.)  Plaintiff saw Dr. Contreras again in April 2012, and Dr. Contreras said

Plaintiff's symptoms "have been essentially unchanged" since her prior examination.  (AR 666-

68.)  He noted that Plaintiff had tenderness and decreased range of motion with pain, but normal

neurological findings including reflexes and sensation.  (AR 669-72.)  He opined that Plaintiff

should avoid very heavy lifting repetitive bending, prolonged sitting, repetitive work above the

right shoulder, prolonged standing and walking, repetitive squatting, kneeling, climbing, and

prolonged stooping.  (AR 678-79.)  During this time, Plaintiff believed that she could sit, stand,

and walk for up to 30 minutes each at one time.  (AR 867.)  Throughout 2012, Plaintiff

continued to report pain, and stated that physical therapy and medication helped her pain.  (AR

800-01, 805-06, 813, 817, 825.)

In October 2012, State agency physician R. Fujikama, M.D., reviewed Plaintiff's records

for Plaintiff's reconsideration request.  (AR 132.)  Dr. Fujikama's findings were consistent with

Dr. Shibuya's opinion, and the State agency denied Plaintiff applications again on

reconsideration.  (AR 133-37.)

On January 16, 2013, Plaintiff was evaluated by Mark Greenspan, M.D.  Plaintiff told Dr.

Greenspan that she could lift up to 25 pounds before her injury, but now could lift only 5 pounds.

(AR 1016.)  Plaintiff reported difficulty with daily activities including laundry, shopping, getting

dressed, showering, vacuuming, mopping, sweeping, dusting, cleaning bathrooms, and washing

dishes.  (AR 1018.)  Dr. Greenspan examined Plaintiff and found decreased range of motion and

tenderness, normal (5/5) motor strength, symmetric reflexes, some decreased sensation, and

negative straight leg raising.  (AR 1020-23, 1025-27.)  He noted that Plaintiff "was started on a

conservative medical management" including medication, physical therapy, chiropractic care, stretching and strengthening exercises, soft tissue manipulation, and a trans-cutaneous electrical nerve stimulation (TENS) unit.  (AR 1028.)

Later that month, on January 26, 2013, Plaintiff attended a consultative examination with psychologist Gil Schmidt, Psy.D.  Dr. Schmidt observed that Plaintiff carried a cane "but did not appear to use it for any significant issue," that she "walked without any sense of having physical pain," that her mood and gait were normal, and that she was "bantering socially with the interpreter and laughing."  (AR 1041, 1043.)  Plaintiff told Dr. Schmidt that she showered daily, handled her own hygiene without assistance, and was able to perform light duty domestic chores. (AR 1043.)  Dr. Schmidt noted that Plaintiff's mental health was "stable," and that her "mental health condition will probably abate within the next 12 months."  (AR 1045.)

**B.     Plaintiff's Statement**

On September 15, 2012, Plaintiff completed a function report.  (AR 334.)  When asked to describe what she did from the time he wakes up to the time he goes to bed, Plaintiff reported that she has to take several breaks when she is awake and she tries to do light duty chores.  (AR 335.)  She responded that she has trouble getting dressed and requires assistance, that she has to hold herself to wash while showering, that she has to support her left hand to comb her hair, and that she has trouble reaching after using the toilet.  (AR 335.)  Plaintiff prepares meals such as soup, microwaveable meals, and sandwiches, but that she can't stand for a long period of time. (AR 335.)  Plaintiff reported that she sometimes forgets to take her medications due to her pain. (AR 336.)  She has her husband or grandson help her with chores.  (AR 336.)  She goes outside one to three times a day, and gets around by walking, using public transportation, and riding in car.  (AR 337.)  Plaintiff has her daughter or son do her stopping for her.  (AR 337.)  Plaintiff is able to count change.  (AR 337.)  Plaintiff reports no hobbies or social activities, but reports that she attends church on Sunday mornings.  (AR 338.)  Plaintiff feels vulnerable when she goes out so she feels like she needs a relative or friend to assist her in getting out of a vehicle when visiting places outside the home.  (AR 338.)  Plaintiff can walk for about 30-45 minutes before needing to rest, and could resume walking after 20-30 minutes.  (AR 339.)  Plaintiff can pay

attention for about 15-20 minutes.  (AR 339.)  Plaintiff uses a cane because of weakened strength in her right/lower knee.  (AR 340.)

**C.     Administrative Proceedings**

Plaintiff filed an application for DIB and SSI on September 30, 2011, alleging she became disabled on May 22, 2010.  (AR 38, 98, 109.)  The agency denied Plaintiff's applications for benefits initially on January 25, 2012, and again on reconsideration on March 4, 2013.  (AR 120-60.)  On November 5, 2013, Plaintiff appeared without counsel and testified before an administrative law judge ("ALJ") with the aid of an interpreter.  (AR 54-75.)

**1.     Plaintiff's Testimony**

At the November 2013 hearing, Plaintiff agreed to appear unrepresented.  (AR 55.) Plaintiff testified she was 56 years old at the time of the hearing.  (AR 55.)  Plaintiff did all of her schooling in El Salvador and has a sixth-grade education.  (AR 55.)  Plaintiff speaks only Spanish, and testified at the hearing with the aid of an interpreter.  (AR 54-56.)  She testified that at her previous job, she sorted mandarin oranges for seven months of the year and collected unemployment benefits in the off-season.  (AR 65-66).  Plaintiff initially testified that she stopped working because she hurt herself when she slipped on plastic and fell at work (AR 56), but later testified that she stopped working because the job was finished and she was laid off (AR 56-57).  Plaintiff testified that following her injury, between February and May 2010, she was allowed to sit while sorting, and at some point "they came and took the chair away from her" and "gave her a different kind of chair that didn't have a rest to rest her back."  (AR 73-74.)  Plaintiff said she was laid off on May 22, 2010, and has not tried to obtain other work since.  (AR 57.) Plaintiff testified that her job ended in May 2010 because the seven-month sorting season ended, and "if the season had still been going on and there will still mandarins to sort, [she] would have been able to continue doing that with the chair."  (AR 73.)  Plaintiff again stated that if she had her "same job back where [she] was doing sorting work and [she] was able to do that position in the same chair [she] used for three months, [she'd] be able to do [her] work like [she] did before."  (AR 75.  *See also* AR 73.)

6

Plaintiff testified at the hearing that she could not work because of hand, shoulder, back, and leg problems.  (AR 57-58.)  She said that she did not believe she could work because she couldn't "even do the chores in my house right now."  (AR 58.)  Plaintiff testified that the doctors referred to her by her insurance company told her that she has a "bone dislocated from her foot."  (AR 58-59.)  She testified that she had headaches and high blood pressure.  (AR 69.) Plaintiff testified that she felt sad and depressed, but that she was not receiving any mental health treatment.  (AR 71.)  Plaintiff said she feeds herself using her left hand only, that her son or husband had to help her get dressed, and her daughter brushed her hair.  (AR 68-69.)  Plaintiff stated that she could sit and stand throughout the day in 15-minute increments if she could shift positions, and that she could use her left hand to lift and carry up to 20 pounds, but not her right hand.  (AR 61-63.)

**2.     Medical Expert's Testimony**

Alexander White, M.D., an internist, testified at the hearing as a medical expert.  (AR 72.)  Dr. White said that Plaintiff had the medically determinable impairments of right shoulder tendinopathy and right ankle spurs, and that the record showed slight limitations in Plaintiff's back, but none that would limit her ability to work.  (AR 77-80.)  He noted that Plaintiff could benefit from using a cane to walk because of her antalgic gait and her obesity.  (AR 81.) Regarding functional limitations, Dr. White testified that Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently with her left arm and 10 pounds occasionally and 5 pounds frequently with her right arm; could walk four to six hours per day, sit for an hour at one time for six hours total, and stand for an hour at one time for six hours total; occasionally bend and crouch; should avoid climbing ramps and stairs; hazardous, moving machinery, unprotected heights, concentrated exposure above street levels for dust, gas and fumes, and climbing ropes, ladders, and scaffolds; and could occasionally reach overhead with her right arm, extend her right arm to half of a normal distance both to the front and to the side, and use both hands for fine fingering, handling, and feeling.  (AR 82-86, 88.)

//

//

### 3.    Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past relevant work as a sorter, DOT 529.687-186, which was a light job with a specific vocational preparation ("SVP")[3] level of 2.  (AR 92).  The VE also identified sedentary sorting, DOT 521.687-086, which represents another category of jobs, usually involving nuts, but the VE acknowledged Plaintiff "wasn't sorting nuts."  (AR 92).  The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work experience.  The VE was to assume this person had the functional limitations as follows:

> Has the capacity to work at the light exertion level, which would include – modified light, rather – which would include lifting and carrying up to 10 pounds frequently and 20 pounds occasionally with the left arm, and the use of the right arm is limited to 10 pounds frequently and 10 pounds occasionally.
>
> Has the capacity to sit in one hour increments for up to six out of an eight hour workday, to stand in the same increments for the same durations, and to walk tin one half hour increments for a range of appropriately four to six hours out of the normal workday.  This is without a sit/stand option.  The increments are sufficient.
>
> Posturals are all occasional.  There would be a preclusion, however, from climbing ladders, ropes, or scaffolds, or stairs and ramps.  There would also be a preclusion for working around hazardous, moving machinery or at unprotected heights.  The manipulative limitations are that the right upper extremity for reaching is limited to occasional overhead reaching.  Otherwise is limited to one half of normal full extension for reaching below shoulder level to the front or to the right side.  The left upper extremity, there are no limitations.
>
> Environmental.    There should be a preclusion from exposure to concentrated dust, gases, and fumes above street level.  As far as manipulative limitations otherwise with both hands, there are unrestricted – foot controls, unrestricted.  Then finally there would be a provision to allow the hypothetical [person to use a cane if they needed to walk on uneven surfaces or over long distances.

(AR 93-94).  The VE testified that such an individual could not perform the produce sorter job as it was normally performed, but could perform the produce sorter job as Plaintiff actually performed it from February to May 2010, that is, while sitting.  (AR 94.)   The VE further

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id.*

testified that Plaintiff could perform the nut sorter job as it is normally performed and that it "would be very similar, if not exactly, to what she was doing in the modified [produce sorting] position," with the only difference that nuts being a smaller product than produce.  (AR 95.)

**D.      The ALJ's Decision**

In a decision dated December 13, 2013, the ALJ found that Plaintiff was not disabled. (AR 38-46.)   The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 38-46.)   The ALJ decided that Plaintiff has not engaged in substantial gainful activity since May 22, 2010, the alleged onset date.  (AR 40.)  The ALJ found that Plaintiff had the severe impairments of (1) right shoulder tendinopathy, (2) right ankle spurs, and (3) obesity (step two).  (AR 40-41.)   However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 41.)  The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[4]

> to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except she is limited to lifting/carrying 10 pounds with the right arm; sitting and standing up to six hours of an eight hour day in one-hour increments; walking four to six hours in an eight-hour day in half-hour increments; never climbing; occasionally performing other postural activities; occasionally reaching overhead and half of the full extension (below shoulder) to the front or sides with the right upper extremity; avoiding pulmonary irritants above street-level concentrations and hazardous moving machinery; and using a cane to walk on uneven surfaces or for long distances.  She should be given the option to use a stool to work in a seated position for comfort.

(AR 42.)

Given her RFC, the ALJ determined that Plaintiff can continue to perform her past relevant work as a "sorter, (DOT 529.687-186, light per the [Directory of Occupational Titles ("DOT")] and sedentary as performed, SVP 2)" as she had "actually performed" it (step four). (AR 45-46.)  In reaching his conclusions, the ALJ also determined that Plaintiff's subjective

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  Social Security Ruling ("SSR") 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

complaints were not fully credible.  (AR 44.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 19, 2015.  (AR 1-9.)

### III.   SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a preponderance."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV.   APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological

1  abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic

2  techniques and must be of such severity that the claimant is not only unable to do her previous

3  work, but cannot, considering her age, education, and work experience, engage in any other kind

4  of substantial, gainful work that exists in the national economy.   42 U.S.C. §§ 423(d)(2)-(3),

5  1382c(a)(3)(B), (D).

6      The regulations provide that the ALJ must undertake a specific five-step sequential

7  analysis in the process of evaluating a disability.   In the First Step, the ALJ must determine

8  whether the claimant is currently engaged in substantial gainful activity.   20 C.F.R. §§

9  404.1520(b), 416.920(b).   If not, in the Second Step, the ALJ must determine whether the

10 claimant has a severe impairment or a combination of impairments significantly limiting her

11 from performing basic work activities.   *Id*. §§ 404.1520(c), 416.920(c).   If so, in the Third Step,

12 the ALJ must determine whether the claimant has a severe impairment or combination of

13 impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20

14 C.F.R. 404, Subpart P, App. 1.   *Id*. §§ 404.1520(d), 416.920(d).   If not, in the Fourth Step, the

15 ALJ must determine whether the claimant has sufficient RFC despite the impairment or various

16 limitations to perform her past work.   *Id*. §§ 404.1520(f), 416.920(f).   If not, in Step Five, the

17 burden shifts to the Commissioner to show that the claimant can perform other work that exists

18 in significant numbers in the national economy.   *Id*. §§ 404.1520(g), 416.920(g).   If a claimant is

19 found to be disabled or not disabled at any step in the sequence, there is no need to consider

20 subsequent steps.   *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§

21 404.1520, 416.920.

22                      **V.      DISCUSSION**

23

24 **A.      The ALJ's Vocational Analysis**

25      Plaintiff contends that the ALJ incorrectly classified Plaintiff's past relevant work as a

26 sedentary sorter and that, even if the position did qualify as past relevant work, it did not amount

27 to substantial gainful activity.   The Commissioner responds that substantial evidence supports

28 the ALJ's finding that Plaintiff had past relevant work as a sedentary sorter and that she retained

1    the residual functional capacity to perform that work.

2    **1.    Legal Standard**

3        In Step Four of the sequential analysis, the ALJ must determine whether the claimant has

4    a sufficient RFC, despite impairments or various limitations, to perform her past work.   20

5    C.F.R. §§ 404.1520(f), 416.920(f).   "Past relevant work" is work that a claimant has "done

6    within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the

7    claimant] to learn to do it."   20 C.F.R. § 416.960(b); *see also* 20 C.F.R. § 416.965(a).

8    Substantial gainful activity is "work activity that is both substantial and gainful[.]" 20 C.F.R. §

9    416.972.   "Substantial work activity is work activity that involves doing significant physical or

10   mental activities." 20 C.F.R. § 416.972(a).   A claimant's work may be substantial even if it is

11   done on a part-time basis or if the claimant does less, gets paid less, or has less responsibility

12   than when the claimant worked before.   *Id.*   Gainful work activity is work activity that a claimant

13   does for pay or profit.   20 C.F.R. § 416.972(b).

14       A social security disability claimant bears the burden of proving that she cannot perform

15   either the "actual functional demands and job duties of a particular past relevant job" or the

16   "functional demands and job duties of the occupation as generally required by employers

17   throughout the national economy."   *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)

18   (quoting Social Security Ruling ("SSR")[5] 82-61, 1982 WL 31387, at *2); *see also Burch v.*

19   *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986).

20   A claimant is typically the primary source for determining what past jobs the claimant has

21   performed, as well as how those jobs were actually performed.   *See* SSR 82-62, 1982 WL 31386,

22   at *3 ("The claimant is the primary source for vocational documentation, and statements by the

23   claimant regarding past work are generally sufficient for determining the skill level [,] exertional

24   demands and nonexertional demands of such work.").   Further, "[t]he claimant is in the best

25   position to describe just what he or she did in [past relevant work], how it was done, what

26

27   [5] Social Security Rulings ("SSR") are final opinions and statements of policy by the Commissioner of Social Security,
     binding on all components of the Social Security Administration.  20 C.F.R. § 422.406(b)(1).  They are "to be relied
28   upon as precedent in determining cases where the facts are basically the same."  *Paulson v. Bowen*, 836 F.2d 1249,
     1252 n.2 (9th Cir. 1988).

1    exertion was involved, what skilled or semiskilled work activities were involved, etc." *See* SSR

2    82-41, 1982 WL 31389, at *4.

3         Although the burden of proof lies with the claimant at Step Four, the ALJ still has a duty

4    to make the requisite factual findings to support his conclusion.  SSR 82-62; *Pinto*, 249 F.3d at

5    844.  The ALJ may draw on two sources of information to define the claimant's past relevant

6    work as actually performed: (1) the claimant's own testimony, and (2) a properly completed

7    vocational report.  *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).  The duty to inquire

8    and make findings regarding a claimant's impairment as it relates to an ability to perform past

9    work does not mean that the initial burden of proving a disability by showing an inability to

10   perform past relevant work has been removed from the claimant.  *Clem v. Sullivan*, 894 F.2d

11   328, 331-332 (9th Cir. 1990).

12        **2.    The ALJ Did Not Err By Finding that Plaintiff Had Past Relevant
               Work as a Sedentary Sorter of Agricultural Produce is Not Erroneous**

13
          **a.    The ALJ Correctly Classified Plaintiff's Past Relevant Work**
14

15        Plaintiff argues the VE incorrectly classified Plaintiff's past relevant work under the DOT

16   as a nut sorter, DOT 521.687-86, because Plaintiff had never sorted nuts.  (Doc. 12, p. 7-8.)

17   While Plaintiff is correct that the VE testified Plaintiff would be able to perform the nut sorter

18   job as "normally performed" (AR 94-95), the ALJ did not base his decision on this testimony

19   and did not find that the nut sorter job constituted Plaintiff's past relevant work.  Instead, the

20   ALJ determined, based on the VE's description of the past work Plaintiff *actually* performed,

21   that Plaintiff's past relevant work was that of sorter, agricultural produce, DOT 529.687-186,

22   characterized as light, sedentary as performed, with a SVP of 2.  (AR 45.)  The ALJ found the

23   VE's testimony consistent with Plaintiff's own description of how she actually performed her

24   prior work.  (AR 46; 409.)  *See Pinto*, 249 F.3d at 845; *see also* SSR 82-62.  Because Plaintiff's

25   statements were "highly probative" of the demands of her prior work, *Matthews v. Shalala*, 10

26   F.3d 678, 681 (9th Cir. 1993), the ALJ properly concluded Plaintiff had past relevant work as a

27   sedentary sorter of agricultural produce.  *See Lee v. Astrue*, 695 F. Supp. 2d 1033, 1041 (C.D.

28   Cal. 2010)  (citing *Santiago v. Sec. of Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991) (per

1    curiam) ("The ALJ is entitled to rely upon a claimant's own description of the duties involved in

2    her former job.")).[6]

3              **b.**     **The ALJ Properly Found Plaintiff's Past Relevant Work as a**
                          **Sedentary Agricultural Produce Sorter Was Substantial**
4                         **Gainful Activity**

5              Plaintiff contends the ALJ erred by finding that Plaintiff's prior work as a sorter of

6    agricultural produce, performed with the use of a chair from February 2010 to May 2010,

7    constituted past relevant work because such work is not substantial gainful activity. Plaintiff

8    argues that the accommodated position instead constituted an "unsuccessful work attempt."

9    (Doc. 12, pp. 9-10.)

10             In conducting the substantial gainful activity analysis, certain work attempts, classified as

11   "unsuccessful work attempts," will not be considered as substantial gainful activity for purposes

12   of the Step Four analysis. *See* 20 C.F.R. §§ 404.1574(c)(1), 416.974(c)(1); *see also Bray v.*

13   *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1221 (9th Cir. 2009). The SSA "generally

14   consider[s] work that [the claimant is] forced to stop or to reduce below the substantial gainful

15   activity level after a short time because of [her] impairment to be an unsuccessful work attempt."

16   20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). *See* SSR 05-02, 2005 WL 6491604, at *2 (Feb. 28,

17   2005).[7]   Plaintiff has the burden of establishing that her previous work qualifies as an

18   unsuccessful work attempt. *Seitz v. Astrue*, No. CIV.A.3:08CV355HEH, 2009 WL 2392159, at

19   *8 (E.D. Va. Aug. 4, 2009) (citing *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1993)); *Scott v.*

20   *Comm'r of Soc. Sec.*, 899 F. Supp. 275, 277 (S.D.W. Va. 1995).

21             The unsuccessful work attempt analysis takes into account the length of time a claimant

22   was employed in a particular position. *See* 20 C.F.R. §§ 404.1574(c)(3)-(5), 416.974(c)(3)-(5);

23   SSR 05-02, 2005 WL 6491604, at *2-3. If the claimant's work effort lasted three months or less,

24

25   [6] Plaintiff argues that "*Slack v. Colvin*," No. CIV S-09-1107 FCD, 2011 WL 534049 (E.D. Cal. Feb. 14, 2011), is a
     case where this Court "recently found a basis for remand under similar facts." Assuming Plaintiff intended to rely on
     *Slack v. Astrue*, that case is hardly "similar": in *Slack*, the ALJ's decision improperly included within the claimant's
26   past relevant work jobs that did not fit that definition, a point which the Commissioner **conceded**. *See Slack*, 2011
     WL 534049, at *4. Here, as set forth above, the ALJ did not mischaracterize Plaintiff's past relevant work in his
27   decision, nor has the Commissioner conceded any error by the ALJ.
     [7] SSR 05-02 is a policy interpretation ruling that applies to "Determination of Substantial Gainful Activity if
28   Substantial Work Activity is Discontinued or Reduced—Unsuccessful Work Attempt." SSR 05-02, 2005 WL
     6491604. *See Rogers v. Colvin*, No. 3:15-5938-DWC, 2016 WL 3344573, at *5 (W.D. Wash. June 15, 2016).

1   the claimant must show that she stopped working, or reduced her work and earnings to the non-

2   substantial gainful activity level, "because of [her] impairment or because of the removal of

3   special conditions which took into account [her] impairment and permitted her to work."  20

4   C.F.R. §§ 404.1574(c)(3), 416.974(c)(3).  *See also Alderson v. Astrue*, No. C09-5081BHS, 2009

5   WL 3245416, at *4 (W.D. Wash. Oct. 6, 2009); *Seitz*, 2009 WL 2392159, at *2; SSR 05-02,

6   2205 WL 6491604, at *2.

7       Here, the ALJ explicitly found that Plaintiff's work attempt lasted less than three months

8   because "she was laid off," not "due to functional limitations arising from her impairments."

9   (AR 44; *see also* AR 42.)  Though the ALJ did not characterize it as such, his implied finding

10  that Plaintiff's sedentary agricultural produce sorter was not an unsuccessful work attempt is

11  supported by substantial evidence.  There is no evidence in the record that Plaintiff's sedentary

12  agricultural produce sorter position was cut short by her impairment or by "the removal of

13  special conditions," e.g., "special equipment . . . suited to [her] impairment."  SSR 05-02, 2005

14  WL 6491604, at *3.

15      Plaintiff argues that her position as a sedentary agricultural produce sorter was an

16  unsuccessful work attempt due to her employer's removal of the chair in which she sat while

17  performing the work.  (Doc. 12, p. 10.)  There is no evidence in the record, however, indicating

18  that Plaintiff's position as a sedentary agricultural produce sorter ended or was reduced to a non-

19  substantial gainful activity level *because* her employer removed the chair, as required by 20

20  C.F.R. §§ 404.1574(c)(3), 416.974(c)(3).  To the contrary, it is well-established in the record that

21  Plaintiff was laid off from her job because the sorting season ended.  (AR 56, 73, 388.)  Plaintiff

22  testified that she was laid off from her job because the seven-month sorting season had ended,

23  and that if sorting season had not ended, she *would have been able to continue sorting produce*

24  *with the use of a chair*.  (AR 56, 73-75; *see also* AR 388.)[8]  *See, e.g., Abreu v. Astrue*, 303 Fed.

---

[8] Furthermore, although Plaintiff does not make this argument, the fact that Plaintiff's employer permitted the use of a
chair while sorting from February 2010 to May 2010 does not automatically render that position non-substantial
gainful activity.  *See Fatheree v. Colvin*, No. 1:13-CV-01577-SKO, 2015 WL 1201669, at *17 (E.D. Cal. Mar. 16,
2015)  ("[W]ork performed under special conditions is not dispositive, but is a factor the ALJ may consider in
determining whether work was substantial gainful activity.") (citing 20 C.F.R. § 404.1573).  *See also Sharkey v.
Comm'r, Soc. Sec. Admin.*, No. CV 07-176-S-LMB, 2008 WL 3289267, at *5 (D. Idaho Aug. 8, 2008) ("[C]ontrary to
what Petitioner's argument suggests, not all work performed under special conditions will be placed outside of the

1   Appx. 556, 558-59 (9th Cir. 2008) ("[Claimant's] testimony itself provides substantial evidence

2   to support the ALJ's conclusion that [claimant] could perform his past relevant work as a

3   customer service representative."); *Giordano v. Astrue*, 304 Fed. Appx. 507, 509 (9th Cir. 2008)

4   ("It was . . . reasonable for the ALJ to conclude that [the claimant] could return to her past

5   relevant work, given that [the claimant's] own description of her past jobs accommodated all of

6   the limitations."); *Kimble v. Colvin*, No. CV–11–3076–CI, 2013 WL 1290651, at * 10 (E.D.

7   Wash. Mar. 27, 2013) (holding that the plaintiff could meet the demands of her past relevant

8   work as a housekeeper where she admitted that she performed various housekeeping jobs for

9   over one year, but reversing because the ALJ failed to establish whether that work amounted to

10  substantial gainful activity); *Rodriguez v. Astrue*, No. CV 08–153–E–CWD, 2009 WL 2750071,

11  at *5 (D. Idaho Aug. 25, 2009) (holding that substantial evidence supported the ALJ's

12  determination that the claimant could perform her past relevant work as a fast food worker where

13  she worked at McDonald's for 17 years, and said that she can work at her own pace and could

14  return to McDonald's if they asked her to come back); *Leach v. Apfel*, No. C 96-4099-CAL,

15  1998 WL 246704, at *4 (N.D. Cal. May 6, 1998) ("In light of what was essentially an admission

16  by plaintiff that he could perform some of his past relevant work, this court will not reverse the

17  ALJ's findings regarding that work.")

18      Plaintiff has failed to meet her burden to demonstrate that her sedentary agricultural

19  produce sorter position was an unsuccessful work attempt, and her argument that the ALJ erred

20  by considering that position as substantial gainful activity is without merit.  *See Meadows v.*

21  *Astrue*, No. 4:08-CV-527-A, 2009 WL 1563523, at *13 (N.D. Tex. June 2, 2009) (finding that

22

23  substantial gainful activity category.  As the regulations describes, special conditions are simply a factor for the ALJ
    to consider and 'work done under special conditions may show that you have the necessary skills and ability to work
24  at the substantial gainful activity level.'") (citing 20 C.F.R. § 404.1573(c)).  Moreover, Plaintiff's impairment did not
    begin until May 22, 2010, *after* she was laid off as an agricultural produce sorter.  The unsuccessful work attempt
25  concept "is an equitable means of ensuring that impaired workers who attempt to engage in substantial gainful
    activity, but are forced to stop because of their impairments, are not penalized for making such attempts." *Nadeau v.*
26  *Astrue*, No. 07–CV–203–PB, 2008 WL 924525, at *5 (D.N.H. Apr. 2, 2008) (citing SSR 05-02, 2005 WL 6491604).
    Plaintiff has offered no reason to justify expanding the unsuccessful work attempt concept to brief periods of work
27  that *precede* the onset of the impairment, and the facts of this case provide no equitable reason to do so.  *See Nadeau*,
    2008 WL 924525, at *5 (unsuccessful work attempt argument rejected where claimant did not allege that the
28  employment was cut short by alleged impairment and alleged date of onset of impairment was long after he stopped
    working at job at issue)

claimant failed to demonstrate that the ALJ's determination that she engaged in substantial gainful activity was unsupported by substantial evidence, where "it was not shown that she was forced to stop work or forced to reduce the amount of her work due to her impairment" necessary to support a finding of an unsuccessful work attempt).  *See also Dickison v. Colvin*, No. CIV-13-1022-F, 2014 WL 4418117, at \*5 (W.D. Okla. Sept. 8, 2014).  The ALJ properly assessed Plaintiff's past relevant work as a produce sorter as substantial gainful activity.

**B.      The ALJ's Consideration of the Medical Evidence**

Plaintiff contends that the ALJ erred by improperly evaluating the opinion of Plaintiff's examining physician, Dr. Contreras.  The Commissioner argues that the ALJ properly evaluated the medical evidence, giving Dr. Contreras' opinion significant weight.

**1.      Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion.  *Id.*  Where a treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record.  *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Factors relevant to evaluating medical opinions include the amount of relevant evidence that supports the opinion and the quality of the explanation provided and the consistency of the medical opinion with the record as a whole.  *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(3)-(6)).

//

//

### 2.   The ALJ Did Not Err in His Assessment of the Opinion of Workers' Compensation Examining Physician Dr. Contreras

The ALJ found that Plaintiff retained the RFC to perform light work, further limited to lifting and carrying no more than 10 pounds with the right arm, and sitting, standing, and walking in half-hour increments; could never climb, could occasionally perform all other postural activities, and could reach overhead with the right arm occasionally, and extend the right arm to half of normal distance otherwise; had to avoid pulmonary irritants above street-level concentration and hazardous moving machinery; needed a cane for uneven surfaces or long distances, and should have the option to use a stool for working.  (AR 42.)  Plaintiff contends the ALJ erred by failing to include workers' compensation physician Dr. Contreras's opined limitation that Plaintiff is precluded from "prolonged sitting." (Doc. 12, p. 14-15.)  Contrary to Plaintiff's claim, the ALJ did <u>not</u> find Plaintiff "capable of sitting for six hours in an eight-hour workday." (Doc. 12, p. 15.)  Instead, after giving "significant weight" to Dr. Contreras' opinion, the ALJ interpreted "prolonged sitting" as imposing a *durational limitation of sitting for one hour at a time,* up to six hours out of an eight-hour workday.  (AR 42, 44.)  This finding was consistent with the opinion of internist medical expert Dr. White, who reviewed the entire record as of November 2013.  Dr. White testified that Plaintiff "should be able to sit for an hour at least at one time and then move about and sit again," for a total of six hours in an eight-hour day.  (AR 83-84.)  Dr. White's opinion constituted substantial evidence upon which the ALJ could properly rely.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2001) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

While Plaintiff is correct that "[t]he ALJ is responsible for . . . resolving conflicts in the medical testimony, and for resolving ambiguities," *Tommasetti*, 533 F.3d at 1042, Plaintiff has not established that the limitation of sitting for one hour at a time, up to six hours in an eight hour day, is inconsistent with a restriction from "prolonged sitting."[9]  Both cases on which

---

[9] The term "prolonged sitting" is not defined in the California workers' compensation guidelines, *see Booth*, 181 F. Supp. 2d at 1108, and Dr. Contreras' opinion does not define the term.  Even if "prolonged sitting" were a defined term in the workers' compensation guidelines, however, such definition would not have been conclusive of the ALJ's decision.  *See Desrosiers v. Secretary of Health & Human Serv*., 846 F.2d 573, 576 (9th Cir. 1988).

1    Plaintiff exclusively relies in arguing that the ALJ's finding is inconsistent with Dr. Contreras'

2    opinion, *Norman v. Barnhart*, No. SA CV-04-902-PLA, 2006 WL 211949, at *1 (C.D. Cal. Jan.

3    25, 2006), and *Booth v. Barnhart*, 181 F. Supp. 2d 1099 (C.D. Cal. 2002), are inapposite.  In

4    both *Norman* and *Booth*, the Court interpreted the term "prolonged sitting" in the Social Security

5    disability context to mean sitting "for at least half of the work day."  *See Norman*, 2006 WL

6    211949, at *6; *Booth*, 181 F. Supp. 2d at 1108.  In *Norman*, the Court found that the ALJ's

7    determination that the claimant had "no sitting restriction and could stand and walk for six hours

8    during the workday" was erroneous in light of the ALJ's failure to interpret or discuss the

9    "contradict[ory]" and "conflicting" opinion of the workers' compensation physician who

10   imposed the "prolonged sitting" limitation.   *Norman*, 2006 WL 211949, at *6.  In *Booth*, the

11   Court found that the ALJ's erred by not "adequately translat[ing] . . . into Social Security terms"

12   the workers' compensation physician's "prolonged sitting" limitation, and by not adequately

13   analyzing her opinion, even though it was "controverted by other medical opinion evidence."

14   *Booth*, 181 F. Supp. 2d at 1108-09.

15          Here, while the ALJ did not expressly translate Dr. Contreras' "prolonged sitting"

16   limitation into Social Security terms, he also did not reject that limitation, either.   To the

17   contrary, unlike in *Norman* and *Booth*, the ALJ accorded significant weight to Dr. Contreras'

18   opinion and interpreted "prolonged sitting" consistently with the evidence in the record,

19   including Plaintiff's own testimony that she could perform the work of sorter of agricultural

20   produce, if allowed to perform that work in a seated position as she had from February to May

21   2010.  (AR 75.)  Because there was no "contradiction" or "conflict" in the record between Dr.

22   Contreras' opinion and the other evidence, the ALJ permissibly incorporated a limitation to sit

23   for a total of six hours in an eight-hour workday in no more than one-hour blocks to address Dr.

24   Contreras's opinion Plaintiff was precluded from "prolonged sitting."  *See Macri v. Chater*, 93

25   F.3d 540, 543-44 (9th Cir. 1996) (in analyzing medical opinions using workers' compensation

26   terminology, the ALJ "is entitled to draw inferences 'logically flowing from the evidence.'")

27   (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982));  *Norman*, 2006 WL 211949,

28   at *5 ("[T]he ALJ was required to evaluate [workers' compensation] terminology like any other

medical opinion.") (citing *Coria v. Heckler*, 750 F.2d 245, 247 (3rd Cir. 1984) ("[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim")).   The ALJ's determination that Plaintiff is able to sit in one-hour increments for up to six hours in an eight hour work day is supported by substantial evidence, including Dr. Contreras' "prolonged sitting" limitation, the opinion of medical expert Dr. White, and Plaintiff's own testimony.   The ALJ's RFC assessment properly incorporated all of those limitations supported by substantial evidence within the record.

## C.     The ALJ's Consideration of Plaintiff's Testimony

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting her statements regarding the severity and extent of her ongoing symptoms.   The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's subjective complaints.

### 1.     Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id*.  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id*. (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.  *Id*.  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

of treatment; and (3) the claimant's daily activities.   If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray*, 554 F.3d at 1226-27; 20 C.F.R. § 404.1529.  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

### 2.    The ALJ Properly Found Plaintiff Less Than Fully Credible

Here, the ALJ found Plaintiff's credibility was undermined by several factors:

The documented objective medical evidence, including generally normal clinical findings, and the claimant's daily activities are inconsistent with functional limitations to the degree alleged.  A consultative examiner noted that though the claimant carried a cane, she "did not appear to use it for any significant issue," "walked without any sense of having physical pain," and was able to "banter[] socially with the interpreter and laugh," behavior which is inconsistent with the severe level of pain alleged.  (Ex. 12F: 1, 3, 5)  Moreover, she stopped working when she was laid off, rather than due to functional limitations arising from her impairments, and testified that she did not look for work since then, suggesting that she may be unemployed for reasons other than her impairments and could have continued to work.

(AR 44.)  Thus, in assessing Plaintiff's credibility, the ALJ relied on: the Plaintiff's work history and inconsistencies between both the Plaintiff's symptoms and clinical observations and the record, including the objective medical evidence her reports of activities of daily living.

### a.    Work History

The ALJ properly found that Plaintiff's credibility was weakened by her own testimony

that she stopped working in May 2010 for reasons unrelated to any alleged impairment.  (AR 44.)  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ did not err in considering the claimant's work history and his admission that he left his job for reasons other than his alleged impairment); *Drouin v. Sullivan*, 966 F.2d 1255, 1259 (9th Cir.1992) (ALJ did not err in considering that, "according to [the claimant's] own testimony, she did not lose her past two jobs because of pain").  Plaintiff testified that she was laid off from her job because the seven-month sorting season had ended, and that if sorting season had not ended, she would have been able to continue sorting produce with the use of a chair.  (AR 56, 73-75; *see also* AR 388.)  Plaintiff's admission that she could have continued to work but for the end of the sorting season was a sufficiently clear and convincing reason to discount Plaintiff's credibility, and highly probative as to the veracity of her statements that she is unable to work due to her physical and mental limitations.  *See Alonzo v. Colvin*, No. 1:14-CV-00460-SKO, 2015 WL 5358151, at *18 (E.D. Cal. Sept. 14, 2015).

### b.      Clinical Observations

The ALJ properly discounted Plaintiff's credibility due to inconsistencies between Plaintiff's subjective complaints and the consultative examiner's clinical observations.  (AR 44.) *Regennitter v. Commissioner*, 166 F.3d 1294, 1297 (9th Cir. 1998) (explaining that a determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement).  In her disability report, adult function report, and testimony at the hearing, Plaintiff claimed that she has problems in her right shoulder (AR 303), excessive pain on her right knee and foot (AR 334), pain in her back and waist (*id.*), problems walking due to weakness (AR 63), and pain in her right hand up to her shoulder (AR 68). However, Dr. Schmidt, psychological consultative examiner, made contradictory findings.  Dr. Schmidt observed that although Plaintiff "carried a cane with her," she "did not appear to use it for any significant issue," "walked without any sense of having physical pain," and was able to "banter[] socially with the interpreter and laugh."  (AR 1041, 1043, 1045.)  As the ALJ noted in his decision, these clinical observations are "inconsistent with the severe level of pain alleged." (AR 44.)

1    While subjective symptom testimony cannot be rejected solely on the ground that it is not

2 fully corroborated by objective medical evidence, the medical evidence is still a relevant factor

3 in determining Plaintiff's credibility. *Rolling v. Massanari*, 261 F.3d 853, 957 (9th Cir. 2001)

4 (citing 20 CFR § 404.1529(c)(2)).  The inconsistencies between Plaintiff's complaints of severe

5 pain and her consultative examiner's clinical observations, taken together with Plaintiff's

6 inconsistent statements relating to her inability to work, constitute substantial evidence

7 supporting the ALJ's adverse credibility finding.  *See, e.g., Vellanoweth v. Astrue*, No. CV 10-

8 3105-MLG, 2010 WL 5094254, at *3 (C.D. Cal. Dec. 6, 2010).

9                        **c.    Objective Medical Evidence and Daily Activities**

10    Finally, the ALJ noted that "the documented objective medical evidence, including

11 generally normal clinical findings, and the claimant's daily activities are inconsistent with

12 functional limitations to the degree alleged."  (AR 44.)  Though the Commissioner asserts the

13 ALJ properly discredited Plaintiff on these bases, the Court is unconvinced that the ALJ was

14 sufficiently specific in his articulation of these reasons to permissibly discredit Plaintiff's

15 testimony.  For example, the ALJ failed to specifically refer to what parts of the objective

16 medical evidence or Plaintiff's testimony as to her daily activities undermined her subjective

17 pain testimony; it is merely a conclusory statement that the objective medical evidence and

18 Plaintiff's daily activities, summarized earlier within the decision, are not consistent with

19 Plaintiff's subjective testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015);

20 *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).  Under Brown-Hunter, the observations

21 an ALJ makes as part of the summary of the medical record are <u>not</u> sufficient to establish clear

22 and convincing reasons for rejecting a Plaintiff's credibility.  806 F.3d at 494.  Instead, the ALJ

23 must <u>link</u> the medical evidence at issue to the Plaintiff's testimony. *Id*.  Under *Burrell*, the ALJ

24 must specify "which daily activities conflicted with which part of [the plaintiff]'s testimony."

25 775 F.3d at 1138.  Here, the ALJ did neither.

26    However, because the ALJ articulated permissible reasons for discounting Plaintiff's

27 credibility, this error is harmless due to the other reasons articulated by the ALJ for discounting

28 Plaintiff's credibility -- including Plaintiff's inconsistent statements and contradictory clinical

observations. *See Carmickle*, 533 F.3d at 1162 (citing *Batson v. Comm. of Soc. Sec. Admin.*, 359 F. 3d 1190, 1197 (9th Cir. 2004) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion' such is deemed harmless and does not warrant reversal."); *Tonapetyan v. Halter*, 242 F. 3d 1144, 1148 (9th Cir. 2001) (that some reasons for discrediting claimant's testimony should be properly discounted does not render an ALJ's determination invalid so long as that determination is supported by other, substantial evidence).  Given the above, the ALJ provided sufficiently clear and convincing reasons to conclude Plaintiff's subjective symptom testimony was not credible.

Further, even if Plaintiff's subjective complaints had been fully credited, the Court notes that the ALJ's credibility determination would not be disturbed, as Plaintiff testified that she is *still capable of performing her past relevant work* as a sedentary sorter of produce. *See Salajan v. Astrue*, No. EDCV 07-1065 JC, 2008 WL 2705166, at *9 (C.D. Cal. July 7, 2008) (finding clear and convincing reason to reject plaintiff's testimony based upon the inconsistency between her admission that she could perform her past relevant work and her allegations of disability). Again, any error in the ALJ's credibility analysis is harmless to the ultimate disability determination.  The ALJ's credibility determination was proper.

## VI.        CONCLUSION AND ORDER

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **August 2, 2016**                     /s/ *Sheila K. Oberto*
                                                 UNITED STATES MAGISTRATE JUDGE

24